UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
COVINGTON

CIVIL ACTION NO. 04-140-DLB

BROADCAST MUSIC, INC., ET AL.                                                      PLAINTIFFS


vs.                              **MEMORANDUM OPINION & ORDER**


ROOSTER'S, INC. d/b/a ROOSTERS, ET AL.                                             DEFENDANTS

*******************************

Plaintiffs, licensor and owners of copyrighted music, brought this action against Defendant Rooster's, Inc. ("Roosters") and its owner, Frank Baker, for copyright infringement. *See* 17 U.S.C. § 501. They seek injunctive relief, statutory damages, costs, and attorney's fees.

This matter is presently before the Court upon Plaintiffs' motion for summary judgment. (Doc. #25). Defendants filed a response (Doc. #27), to which Plaintiffs replied (Doc. #29). For the reasons that follow, the Court concludes that Plaintiffs are entitled to summary judgment on their copyright infringement claims.

On August 8, 2005, Defendants filed a motion to enforce settlement. (Doc. #26). Pursuant to 28 U.S.C. § 636(b), the motion was referred to the United States Magistrate Judge, who issued a Report and Recommendation (R&R) that Defendant's motion be denied. (Doc. #31). By separate order entered concurrently herewith, the Court adopts the Magistrate Judge's R&R in its entirety.

1

## I. FACTUAL BACKGROUND & PROCEDURAL HISTORY

Plaintiff Broadcast Music, Inc. ("BMI") heralds itself as a "performing rights society." BMI licenses the right to publicly perform copyrighted musical works to establishments, such as Roosters, on behalf of the copyright owners.[1] Roosters is a bar located in Falmouth, Kentucky that regularly features live and recorded music.[2] Through agreements with copyright owners, BMI acquires non-exclusive public performance rights to their songs. (Saffer affidavit). BMI, in turn, grants those rights to music users, such as broadcasters and business owners, via "blanket license agreements." (*Id*.). BMI currently has 4.5 million songs in its repertoire. (*Id*.).

On June 6, 2001, BMI sent Roosters a letter informing it of the need to obtain a license in order to play or perform copyrighted music at its establishment. A "blanket license" was also enclosed for Mr. Baker's review and signature. BMI sent follow-up letters explaining the same on June 29, October 31, and December 4, 2001; and January 4, 22, and 31, 2002. BMI representatives also contacted Roosters several times via telephone.[3] Despite these efforts, Roosters failed to secure a licensing agreement with BMI.

On June 18, 2002, BMI sent Roosters the following "cease-and-desist" letter:

Dear Mr. Baker:

As you have not responded to our correspondence and in the absence of a license agreement with BMI, this shall serve as formal notice to you that effective this date, you must cease all use of BMI licensed music in your

---

[1] The other named Plaintiffs in this action are the copyright owners of the music in BMI's repertoire.

[2] Roosters features predominantly country music.

[3] Plaintiffs allege that thirty-two phone calls were made. (Doc. #29, p.6)

> business or organization. The continued use of music in the BMI repertoire without authorization will result in copyright infringement. Copyright infringement is a violation of federal law ... [and] may subject you to substantial damages. BMI is prepared to take whatever action may be necessary to protect the right[s] of its composers and publishers ....

The contents of this letter were reiterated in a follow-up letter on January 27, 2003. BMI sent a final letter on May 7, 2004, after its Music Researcher, Barry Seidel, visited Roosters on two separate occasions and observed BMI-licensed songs being performed. The letter included a calculation of back fees owed, as well as a completed license agreement. Receiving no response, BMI filed the instant suit on June 30, 2004, alleging thirteen separate claims of infringement arising out of Defendants' unauthorized performance of BMI-licensed songs at Roosters. [4]

## II. ANALYSIS

### A. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Once the movant has met this initial burden, the non-movant cannot rest on its pleadings, but must show that there is a genuine issue for trial. *Id.* at 324. All evidence and inferences based on evidence must be considered in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio* Corp., 475 U.S. 574, 587 (1986). However, "[t]he trial court no longer has a duty to search the entire record to

---

[4]During the pendency of this lawsuit, Roosters entered into a licensing agreement with the American Society of Composers, Authors, and Publishers (ASCAP), a competitor of BMI.

establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1427, 1479-80 (6th Cir. 1989).

### B. Copyright infringement claim

To establish a claim for copyright infringement of a musical work by means of public performance, a claimant must prove: (1) the originality and authorship of a composition; (2) a valid copyright under the formalities of the Copyright Act; (3) claimant's ownership of the copyright at issue; (4) defendant's public performance of the composition; and (5) defendant's failure to obtain permission from the claimant for such performance. *See Jobete Music Co., Inc. v. Johnson Communications, Inc.*, 285 F. Supp. 2d 1077, 1082 (S.D. Ohio 2003) citing *Varry White Music v. Banana Joe's of Akron, Inc.,* 2002 WL 32026609 (N.D. Ohio Oct. 28, 2002); *Superhype Pub., Inc. v. Vasiliou,* 838 F. Supp. 1220, 1224 (S.D. Ohio 1993); *Feist Publications, Inc. v. Rural Telephone Serv. Co., Inc.,* 499 U.S. 340, 361 (1991); *Coles v. Wonder,* 283 F.3d 798 (6th Cir. 2002).

Plaintiffs allege that the first three elements are satisfied based upon the affidavit of Judith Saffer, BMI's Assistant General Counsel. (Doc. #25, Exh. 2). Attached to Ms. Saffer's affidavit is: a list of musical works, registration certificates issued by the U.S. Copyright Office, as well as documentation relating to the chain of ownership of each copyrighted work. A copyright certificate is prima facie evidence of the first three elements of an infringement claim. *See* 17 U.S.C. § 410(c). Defendants have not disputed this evidence, nor have they otherwise created a genuine issue of material fact regarding Plaintiffs' ownership of valid copyrights in the songs at issue in this litigation. Thus, upon review of Plaintiffs' uncontroverted evidence, the Court concludes that Plaintiffs have established their ownership of valid copyrights in these thirteen songs.

4

Turning to the fourth element of an infringement claim, i.e., Defendants' public performance, Plaintiffs have provided evidence in the form of "certified infringement reports." These reports were prepared by Barry Seidel, who was hired by BMI to frequent Roosters on two occasions in April 2004, and document any protected works that were publicly performed. Those works included the thirteen songs at issue in this case. Again, Defendants have not presented any contradictory evidence in their response to Plaintiffs' motion for summary judgment. Therefore, the Court finds the "public performance" element satisfied.

Finally, Plaintiffs allege, and Defendants admit, that they did not have a BMI license to publicly perform the copyrighted music on the dates in question. (See Defendants' responses to Plaintiffs' requests for admission, #24-25).[5] Accordingly, there is no genuine issue of material fact regarding the fifth element of an infringement claim, i.e., that Defendants failed to obtain permission for the performances.

Having determined that unlawful infringement occurred, the Court now turns to the issue of liability. Plaintiffs argue that Roosters and its owner, Frank Baker, are jointly liable. In *Sony Corp. of Am. v. Universal City Studios, Inc.,* 464 U.S. 417 (1984), the Supreme Court observed that:

> [t]he Copyright Act does not expressly render anyone liable for infringement committed by another ... [But] vicarious liability is imposed in virtually all areas of the law, and the concept of contributory infringement is merely a species of the broader of the problem of identifying the circumstances in which it is just to hold one individual accountable for the actions of another.

---

[5]Those dates were April 23 and 24, 2004.

*Id.* at 434-35. Courts within virtually every circuit, including the Sixth Circuit, have adopted a two-prong test to determine whether a corporate officer is jointly and severally liable with the corporation for copyright infringement. *Jobete Music Co.*, 285 F. Supp. 2d at 1083.[6] In order for a corporate officer to be vicariously liable, he must possess: (1) the right and ability to supervise the infringing activity, and (2) a direct financial interest in such activities. Thus, under this standard, liability for copyright infringement is not limited to those individuals who directly engage in infringing activity. *Id*. Rather, individuals, such as Defendant Baker, may be held vicariously liable when they have the right and ability to supervise the infringing activity, and have a financial interest in the exploitation of copyrighted materials.

In support of their contention that Frank Baker should be held liable for the infringement herein, Plaintiffs note that Defendants have admitted, in discovery, that Baker has the right and ability to control the activities of Roosters, as well as a direct financial interest in the corporation. (See Defendants' responses to Plaintiffs' requests for admission, #1-8). Therefore, Plaintiffs allege that the two-prong test outlined above is

---

[6] *See Famous Music Corp. v. Bay State Harness Horse Racing & Breeding Ass'n,* 554 F.2d 1213, 1215 (1st Cir. 1977); *Shapiro, Bernstein & Co. v. H.L. Green Co.,* 316 F.2d 304, 307 (2d Cir. 1963); *Nelson-Salabes, Inc. v. Morningside Development, LLC,* 284 F.3d 505, 513 (4th Cir. 2002); *RCA/Ariola Internat'l, Inc. v. Thomas & Grayston Co.,* 845 F.2d 773 (8th Cir. 1988); *A & M Records, Inc. v. Napster, Inc.,* 239 F.3d 1004, 1022 (9th Cir. 2001); *Vasiliou,* 838 F. Supp. at 1225; *All Nations Music v. Christian Family Network,* 989 F. Supp. 863 (W.D. Mich. 1997); *Mallven Music v.2001 VIP of Lexington, Inc.,* 1986 WL 10704 (E.D. Ky. Apr. 24, 1986); *Rodgers v. Quests, Inc.,* 1981 WL 1391 (N.D. Ohio Oct. 30, 1981); *Sailor Music v. IML Corp.,* 867 F. Supp. 565, 568-69 (E.D. Mich. 1994).

satisfied. Defendants have offered no response. Accordingly, the Court finds that Baker, in addition to Rooster's, Inc., is liable for the infringement.[7]

Defendants have attempted to raise two affirmative defenses to Plaintiffs' claims. First, they argue that the licensing fee, as calculated by BMI, was and continues to be unreasonable. Second, Defendants argue that Plaintiffs should be barred from maintaining the present suit based upon BMI's failure to furnish a list of songs in its repertoire upon request. For the reasons that follow, the Court finds both arguments unpersuasive.

Defendants claim that the annual licensing fee quoted by BMI in its correspondence was unreasonably high, and that BMI was unwilling to negotiate. The evidence reveals that the licensing fee was a function of many factors, including the maximum occupancy of the establishment. Defendants allege that BMI overestimated this factor, resulting in an unreasonable fee.[8] In support, Defendants rely on the affidavit of Frank Baker, in which he states that the local fire authority never calculated the maximum occupancy for the building, and that Rooster's bar consists of 3,600 square feet. Even though Defendants have produced evidence in support of their argument, disputes over the reasonableness of a licensing fee do not constitute valid defenses to a copyright infringement suit. *See U.S. Songs, Inc. v. Downside Lenox, Inc.*, 771 F. Supp. 1220, 1225-26 (N.D. Ga. 1991) citing *Wow and Flutter Music, Inc. v. Gato Gordo Enterprises,* 1984 WL 8148 (S.D. Ill. Aug. 6, 1984) ("a dispute as to reasonableness of a license fee does not justify infringing on a valid

---

[7]The Court also notes that public records reveal that Frank Baker is the sole officer of Rooster's, Inc.

[8]The fee, as calculated by BMI was $1,830/year. Defendants claim that the proper fee was $1,098/year. (Doc. #27, p.2).

7

copyright."). Moreover, Defendants have not availed themselves of the proper mechanism by which to challenge BMI's proposed license fee.[9]

Defendants' final argument is that Plaintiffs should be equitably estopped from asserting infringement because BMI failed to provide Mr. Baker with a list of all the songs in its repertoire. In support, they rely on *Tempo Music, Inc. v. Myers*, 407 F.2d 503 (4th Cir. 1969). In that copyright infringement case, the court considered whether ASCAP - a licensor, much like BMI - had any duty to respond to the defendant's request for a list of copyrighted compositions. *Id*. at 506. The court answered in the affirmative, relying primarily on the terms of a consent decree under which ASCAP was operating at the time. *Id*. Plaintiffs claim that *Tempo Music* is factually distinguishable, and that other courts have held that no such duty on behalf of licensors exists. *See Broadcast Music, Inc. v. Niro's Palace, Inc.*, 619 F. Supp. 958, 962 (N.D. Ill. 1985). The Court agrees.

In his affidavit, Frank Baker states that he "asked for a listing of songs owned by BMI to allow [him] to make an informed decision as to whether [he] should license their catalog." (Doc. #27, Exh. A). Even accepting this allegation as true, as the Court must in adjudicating Plaintiffs' motion for summary judgment, the Court concludes that BMI was under no legal duty to comply with such a request. *See Bourne Co. v. Speeks*, 670 F.

---

[9]*See* Amended Final Judgment entered in *United States v. Broadcast Music, Inc.,* 1966 U.S. Dist. LEXIS 10449, 1966 Trade Cas. (CCH) P71,941 (S.D. N.Y. 1966), *modified by* 1994 WL 901652, 1994 U.S. Dist. LEXIS 21476, 1996-1 Trade Cas. (CCH) P71,378 (S.D. N.Y. 1994) (the "BMI Consent Decree"). The BMI Consent Decree requires BMI to make through-to-the-listener licenses available for public performances of its music and to provide applicants with proposed license fees upon request. If BMI and the applicant cannot agree on a fee, either party may apply to the rate court for the determination of a reasonable fee.

Supp. 777, 781 (E.D. Tenn. 1987) citing *Niro's Palace*, 619 F. Supp. 958. Accordingly, Defendants' affirmative defense to Plaintiffs' claims is insufficient as a matter of law.

**C.     Damages**

Under the Copyright Act, an infringer is liable for either the copyright owner's actual damages or statutory damages. 17 U.S.C. § 504(a). Statutory damages for each individual act of infringement can be no less than $750 and no more than $30,000. *Id*. § 504(c)(1). Where the copyright owner establishes willful infringement, the Court may increase the award of statutory damages to a sum of not more than $150,000. *Id*. § 504(c)(2). Where, however, the infringers establish that they were not aware and had no reason to believe that their acts constituted infringement (i.e., "innocent infringement"), the Court may, in its discretion, reduce the award of statutory damages to a sum not less than $200. *Id.* A prevailing party may seek additional relief under the Copyright Act. Section 502 authorizes the Court to grant "temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." *Id*. § 502(a). In addition, the Court may allow recovery of full costs by or against any party, including reasonable attorneys' fees to the prevailing party. *Id*. § 505.

In this case, Plaintiffs seek statutory damages in the amount of $3,000 per each act of infringement ($39,000 in total), a permanent injunction, costs, and attorney's fees. In support, they allege that "between June 2001 and May 2004, BMI sent eleven (11) letters to Defendants advising them of the need to enter into a licensing agreement." (Doc. #29, p.6). In addition, Plaintiffs claim that "a BMI representative telephoned Roosters on thirty-two (32) separate occasions." (*Id*.). Defendants, on the other hand, allege that there is "a vast dispute between the parties as to how many times the Plaintiff contacted the

9

Defendants via mail ...." (Doc. #27, p.2). They do, however, acknowledge receipt of the February 18, 2004 letter, which included a fee calculation. (*Id*.). Finally, Defendants argue that the fact that they requested a list of the songs in BMI's repertoire militates against a finding of willful infringement in this case.

As an initial matter, the Court notes that awarding statutory damages is a factual determination, to be made either by the Court or, if requested by a party, a jury. *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340 (1998). In this case, neither party has requested a jury trial on damages, therefore, the assessment of damages is within the province of the Court. See *Jobete Music Co.*, 285 F. Supp. 2d at 1085. It is well-established that trial courts have wide discretion in awarding damages within the statutory range provided in § 504(c)(1). *Id.* citing *Columbia Pictures Indus., Inc. v. T & F Enters., Inc.*, 68 F. Supp. 2d 833, 840 (E.D. Mich. 1999). In determining the amount of damages to be awarded, courts generally consider: (1) the infringer's blameworthiness, i.e*.,* whether the infringement was willful, knowing, or innocent, (2) the expenses saved and the profits reaped by the defendants in connection with the infringement, (3) the revenues lost by the plaintiffs due to the defendants' conduct, and (4) the goal of deterring wrongful conduct. *Id.*

In this case, the parties dispute the number of times BMI contacted Defendants concerning the need for a license. Defendants also object to the relief sought by Plaintiffs, specifically the amount of statutory damages. Under these circumstances, the Court concludes that a hearing on damages is necessary and appropriate.

### III. CONCLUSION

Accordingly,

**IT IS ORDERED** that:

(1)   Plaintiffs' motion for summary judgment (Doc. #25) be, and hereby is, **GRANTED**; and

(2)   This matter is set for a status conference on **February 23, 2006 at 8:30 a.m.** in **Covington**, at which time the Court will schedule a hearing on damages.

This 14th day of February, 2006.

G:\DATA\Opinions\2-04-140-MSJ.wpd



Signed By:
*David L. Bunning*  DB
United States District Judge